UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: APR 05 2016

---

Vladimir Maliarov,

        Plaintiff,

–v–

Eros International PLC *et al.*,

        Defendants.

15-CV-8956 (AJN)

MEMORANDUM AND ORDER

---

Savva Popi,

        Plaintiff,

–v–

Eros International PLC *et al.*,

        Defendants.

16-CV-223 (AJN)

MEMORANDUM AND ORDER

---

ALISON J. NATHAN, District Judge:

    Before the court are two securities fraud class actions against Eros International PLC ("Eros") and certain of its officers and directors. Plaintiffs in both cases allege that Defendants made materially false and misleading statements about Eros's financial condition that caused a stark decline in stock price when discovered. Currently pending are motions for consolidation, appointment of lead plaintiff, and approval of class counsel. Plaintiff Savva Popi[1] ("Popi"), putative class members Fred Eisner and Strahinja Ivošević ("Eisner and Ivošević"), and

---

[1] There is some dispute in the briefing on these motions as to Savva Popi's proper name and gender. *See, e.g.*, Dkt. No. 25 Ex. 1 at 9. Popi's counsel clarifies in their reply brief that Mr. Savva Popi is male, and that "Popi" is indeed his last name. Dkt. No. 29 Ex. 1 at 2.

1

Teamsters Local 710 Pension Fund ("Local 710") have moved to consolidate the two actions currently pending before the Court. Dkt. Nos. 6, 11, 13. In addition, Popi, Eisner and Ivoševič, Local 710, and John J. Sciortino ("Sciortino") have moved to be appointed lead plaintiff.[2] Dkt. Nos. 6, 11, 13, 16. For the reasons articulated below, the Court consolidates the actions, appoints Eisner and Ivoševič as lead plaintiffs, and approves their choice of counsel.

I.   CONSOLIDATION

Popi and several putative class members have moved for consolidation of the two cases presently before the Court, 15-CV-8956 and 16-CV-223. Federal Rule of Civil Procedure 42 provides that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions." Fed. R. Civ. P. 42(a)(2). Courts have "broad discretion to determine whether consolidation is appropriate" and look to "considerations of judicial economy" in exercising such discretion. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990). "In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact . . . ." *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting *Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992)).

The two cases currently before the Court involve "substantially identical questions of law and fact." *Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 394 (S.D.N.Y. 2014). The two complaints raise claims against the same defendants pursuant to the same provisions of the Securities Act and Exchange Act and contain almost identical recitations of fact. *See, e.g.*, Maliarov Comp. ¶¶ 2-14, 40-42; Popi Comp. ¶¶ 2-5, 8-14, 42-44. Both actions

---

[2] Anumita Singh and James Christopher Shelburne withdrew their motion for appointment as lead plaintiff. Dkt Nos. 8, 24. Similarly, the Town of Davie Police Officers' Pension Plan filed a motion of non-opposition in light of other movants' larger financial losses. Dkt. Nos. 19, 22.

are brought by investors who purchased Eros securities in connection with its initial public offering ("IPO") and allege that Eros's registration statement, SEC quarterly reports, and public press releases contained materially false and misleading statements. *See* Maliarov Comp. ¶¶ 1, 44-60; Popi Comp. ¶¶ 1, 46-61. Although the complaints allege different initial disclosure dates of Eros's fraud, *compare* Maliarov Comp. ¶ 6 *with* Popi Comp. ¶ 6, the question of the correct initial disclosure date is common to both cases. Because "the complaints are based on the same 'public statements and reports'" and contain "substantially identical questions of law and fact," the Court finds that "considerations of judicial economy" justify consolidation. *See Weltz*, 199 F.R.D. at 131 (quoting *Werner*, 797 F. Supp. at 1211); *Reitan*, 68 F. Supp. 3d at 394; *Johnson*, 899 F.2d at 1285.

## II.   APPOINTMENT OF LEAD PLAINTIFF

Under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Court is required to appoint the "most adequate plaintiff" as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The statute establishes a presumption that the most adequate plaintiff is the person who "has either filed the complaint or made a motion in response to a notice," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23." *Id.* § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). This presumption may only be rebutted by proof that the purportedly most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iii)(II)(aa), (bb).

Although the PSLRA requires courts to consider the "financial interest" of potential lead plaintiffs, it does not specify how to determine who has the largest financial interest. Courts in this district, however, have considered the following factors:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period . . . ; (3) the net funds expended during the class period . . . ; and (4) the approximate losses suffered.

*Peters v. Jinkosolar Holding Co., Ltd.*, No. 11-CV-7133 (JPO), 2012 WL 946875, at *5 (S.D.N.Y. March 19, 2012) (quoting *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007)). "It is well settled that '[f]inancial loss, the last factor, is the most important element of the test.'" *Id.* (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 395 (S.D.N.Y. 2008)).

When evaluating financial loss, "courts must consider only those losses that will actually be *recoverable* in the class action." *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617 (S.D.N.Y. 2015). In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), the Supreme Court emphasized that, in a securities fraud case, a plaintiff must "prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused [his] economic loss." *Id.* at 346. In this "corrective disclosure" case, *see Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005), plaintiffs allege that an Alpha Exposure report revealed Eros's fraud and caused stock prices to decline. *See* Maliarov Comp. ¶¶ 6-11; Popi Comp. ¶¶ 6-13. In this type of case, "a plaintiff must [] prove that the company's stock price later declined (and thus caused plaintiff's shares to be worth less) immediately following a disclosure of the alleged misconduct to the public." *In re Comverse Tech., Inc. Sec. Litig.* ("*Comverse*"), No. 06-CV-1825 (NGG), 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007). For this reason, losses "incurred before [a company's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue." *Topping*, 95 F. Supp. 3d at 617-18 (quoting *Comverse*, 2007 WL 680779, at *4).

4

In reporting financial losses to the Court, movants other than Sciortino provided only the total decrease in share value since the date of purchase rather than losses linked to decrease in value after disclosure of the alleged fraud. *See* Dkt. No. 7 Ex. 3 at 2; Dkt. No. 13 Ex. 1 at 40; Dkt. No. 14 Ex. B at 4, 6; Dkt. No. 18 Ex. 3. Although 15 U.S.C. § 78u-4(e) provides a formula for calculating recoverable losses, the parties did not provide sufficient data to conduct this analysis. As a result, the Court will instead conduct a rough estimate of each movant's losses limited to the period between October 30, 2015, when the Alpha Exposure report disclosed Eros's fraud,[3] and November 13, 2015, the last date for which plaintiffs allege stock price information. In conducting these calculations, the Court assumes that Eros's stock price declined $1.69 on October 30, 2015 and fell a further $4.09 by November 13, 2015. *See* Maliarov Comp. ¶¶ 7-11. The Court also relies on stock sale information provided by the parties. *See* Dkt. No. 7 Ex. 3 at 2; Dkt. No. 13 Ex. 1 at 40; Dkt. No. 14 Ex. B; Dkt. No. 18 Exs. 2, 3.

| Movant | Reported Financial Loss | Shares Held Oct. 30 | Initial Stock Decline | Initial Loss | Shares Held Nov. 13 | Further Stock Decline | Further Loss | Total Post-Oct. 30 losses |
|---|---|---|---|---|---|---|---|---|
| Popi | $3,393,877.05 | 0 | $1.69 | $0.00 | 0 | $4.09 | $0.00 | $0.00 |
| Eisner | $671,998.37 | 35,000 | $1.69 | $59,150.00 | 35,000 | $4.09 | $143,150.00 | $202,300.00 |
| Ivoševič | $632,986.98 | 10,175 | $1.69 | $17,195.75 | 0 | $4.09 | $0.00 | $17,195.75 |
| Local 710[4] | $721,033.63 | 26,003 | $1.69 | $43,945.07 | 14,144 | $4.09 | $57,848.96 | $101,794.03 |
| Sciortino | $117,661.00 | 5,000 | $1.69 | $8,450.00 | 5,000 | $4.09 | $20,450.00 | $28,900.00 |

Relying on this data, the Court looks to the "largest financial interest" of the movants and Rule 23 to determine the presumptively most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb), (cc). The Court then evaluates whether this presumption has been

---

[3] The Court will address Popi's allegations of an earlier disclosure date below.
[4] Local 710 also sold 11,859 shares on November 2, 2015 for $13.11. Dkt. No. 13 Ex. 1 at 40. Because this sale price exceeds the value of the stock prior to October 30, 2015, *see* Maliarov Comp. ¶ 7, there is no measurable stock decline and Court does not consider this transaction in calculating post-October 30, 2015 losses.

rebutted. *Id.* § 78u–4(a)(3)(B)(iii)(II). In conducting this analysis, the Court begins with Popi, who alleges the largest financial loss, and continues until it identifies the most adequate plaintiff.

### A.     Popi

Popi alleges that he suffered $3.393 million in financial losses during the Class Period, a figure that dwarfs other alleged losses. Dkt. No. 7 Ex. 3 at 2. Despite this large sum, other movants argue that Popi does not have the largest financial interest under *Dura* and that he is subject to unique defenses that would rebut any presumption of adequacy.

#### 1.     **Popi is not the presumptively most adequate plaintiff**

Although Popi alleges a substantial financial loss, he sold all of his Eros shares on October 20, 2015, Dkt. No. 7 Ex. 3 at 2, ten days before the October 30, 2015 Alpha Exposure report disclosed Eros's alleged fraud. Maliarov Comp. ¶ 6. Other movants argue that this makes Popi an "in-and-out" trader whose losses are not recoverable under *Dura*. *See* Dkt. No. 26 at 4-5; *see also Topping*, 95 F. Supp. 3d at 618 (collecting cases). Popi's own Complaint, however, alleges that Eros's stock began to decline as early as October 13, 2015 as a result of "leakage" from "those behind, affiliated with, or those who had early access to the Alpha Exposure Report." Popi Comp. ¶¶ 6-7.

It is true that "loss causation may be premised on partial revelations that do not uncover the complete extent of the falsity of specific prior statements" if the partial disclosure "somehow reveals to the market that a defendant's prior statements were not entirely true." *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283 (S.D.N.Y. 2008). However, determinations of largest financial interest must be "based on the facts alleged in the complaint." *Comverse*, 2007 WL 680779, at *5. Popi's Complaint does not identify any particular communication partially disclosing allegations of fraud prior to October 30, 2015, but instead relies on unsupported

allegations that those with "early access to the Alpha Exposure Report" leaked such information in an unspecified manner. Popi Comp. ¶¶ 6-7; *cf. Topping*, 95 F. Supp. 3d at 622 (citing a particular letter); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 239 (E.D.N.Y. 2011) (pointing to a particular press release); *Juliar v. SunOpta Inc.*, No. 08-CV-1070 (PAC), 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (citing statements from the director and an analyst report). Because Popi does not "allege facts in support" of his leakage theory to establish loss causation for transactions prior to October 30, 2015, the Court concludes that Popi has not adequately established that he has suffered any recoverable losses for the purpose of the lead plaintiff analysis. *See Comverse*, 2007 WL 680779, at *6 ("[I]t would be unfair to speculate that [a movant] will ultimately be able to demonstrate loss causation for its in-and-out transactions, despite its patent failure to allege [in the complaint] facts in support thereof."). As a result, Popi does not have the largest financial interest and is not the presumptively most adequate plaintiff.

### 2. Popi may not fairly and adequately protect the interests of the class and is subject to unique defenses

Even if Popi were the presumptively most adequate plaintiff, the Court has several concerns about appointing him lead plaintiff. First, Popi is the only movant to allege any partial disclosure of fraud prior to the October 30, 2015 Alpha Exposure report. Popi Comp. ¶ 6; Dkt. No. 12 at 4-5; Dkt. No. 13 Ex. 1 at 13-14; Dkt. No. 17 at 2-3. Importantly, Popi filed his lawsuit alleging these additional facts on the last day for potential class members to file a lead plaintiff motion. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) (giving putative class members "60 days after the date on which [] notice is published" to "move the court to serve as lead plaintiff of the purported class"); Dkt. No. 17 at 4 (indicating that notice in this action was published on November 13, 2015). Until that time, the various suits against Eros alleged an initial disclosure date of October 30, 2015. *See* Maliarov Comp. ¶ 6; *see also Arsani v. Eros Int'l*, 15-CV-8054, Dkt. No. 1 ¶ 4

(D.N.J. Nov. 13, 2015); *Abram v. Eros Int'l,* 15-CV-8122, Dkt. No. 1 ¶ 4 (D.N.J. Nov. 17, 2015); *Sharma v. Eros Int'l,* 15-CV-8816, Dkt. No. 1 ¶ 5 (D.N.J. Dec. 22, 2015). As a result, the other lead plaintiff movants "filed their motions to serve as lead plaintiff in reliance on the [c]omplaint[s]" that had been filed up to that date. *Topping*, 95 F. Supp. 3d at 620.

The Court is hesitant to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour, thereby precluding similarly-situated potential movants from identifying themselves to the Court. For example, if Popi's allegations of a mid-October partial disclosure are accurate, individuals who would otherwise "be able to meet the requirements of a lead plaintiff motion" under the expanded partial disclosure date would be "precluded from filing such motions given the expiration of the PSLRA's time limit for doing so." *Id.* The concern about excluding such individuals is particularly salient here, as Popi "reviewed the complaint and authorized its filing" on December 22, 2015, more than two weeks before it was filed by counsel. *See Popi v. Eros Int'l*, 16-CV-223, Dkt. No. 1 Ex. A (S.D.N.Y. Jan. 12, 2016). The specter of gamesmanship on these facts causes the Court to question whether Popi will "fairly and adequately protect the interests of the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)(aa).

Furthermore, Popi "is subject to unique defenses that render [him] incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iii)(II)(bb). As the chart above indicates, Popi is the only movant whose *entire* alleged loss pre-dates the October 30, 2015 Alpha Exposure report. As a result, Popi, unlike other movants, would be completely barred from recovery if no earlier disclosure date is established. *See Topping*, 95 F. Supp. 3d at 617-18 (quoting *Comverse*, 2007 WL 680779, at *4) (losses "incurred before [a company's] misconduct was ever disclosed to the public are not recoverable"). If there is a serious question as to

whether a movant's losses are the proximate result of a company's misconduct, courts frequently decline to appoint that person as lead plaintiff. *See, e.g., Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005). Because Popi did not incur any losses after the October 30, 2015 Alpha Exposure report was released, the Court finds that he is "incapable of adequately representing the class," § 78u–4(a)(3)(B)(iii)(II)(bb), and thus declines to appoint him as lead plaintiff.[5]

### B.  Eisner and Ivoševič

If Popi is removed from consideration, movants Eisner and Ivoševič have the next-largest financial loss, a combined $1.3 million in total losses or $219,495.75 in post-October 30, 2015 losses as calculated above. The Court will first evaluate whether their losses are properly combined (or "grouped") and whether they satisfy the requirements of Rule 23 to qualify as the presumptively most adequate plaintiff. The Court will then evaluate whether this presumption, if established, has been rebutted.

#### 1.  Eisner and Ivoševič are properly grouped

The main objection to Eisner and Ivoševič's appointment as lead plaintiffs is that their individual losses are improperly grouped together. *See, e.g.*, Dkt. No. 25 Ex. 1 at 10. The PSLRA explicitly contemplates that a "group of persons" may serve as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "The majority of courts, including those in this District, . . . permit[] unrelated investors to join together as a group seeking lead-plaintiff status on a case-by-case basis, if such a grouping would best serve the class." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). In conducting this analysis, courts

---

[5] This conclusion does not call into question the Court's decision to consolidate the cases as "involv[ing] a common question of law or fact." Fed. R. Civ. P. 42(a); *see also* § 78u-4(a)(3)(B)(ii) (requiring courts to decide any motion for consolidation before any lead plaintiff motion).

9

evaluate whether "unrelated members of a group will be able to function cohesively and effectively manage the litigation" by considering a number of factors, including: "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Id.*

An analysis of these factors convinces the Court that Eisner and Ivošević "would best serve the class" as co-lead plaintiffs. *Varghese*, 589 F. Supp. 2d at 392. Although the two do not have familial ties, *see Beckman v. Ener1, Inc.*, No. 11-CV-5794 (PAC), 2012 WL 512651, at *4 (S.D.N.Y. Feb. 15, 2012), they are "long-time friends" and have a relationship that pre-dates this action by almost a decade. Dkt. No. 14 Ex. C ¶ 4. Eisner and Ivošević have participated in at least one joint strategy conversation to discuss their litigation plans and have conferred regarding their counsel's ongoing investigation into Eros's alleged fraud. *Id.* ¶¶ 10-13. They have also represented that they are prepared to attend court proceedings, settlement conferences, and other hearings when doing so "will be of benefit to the proposed Class." *Id.* ¶ 14. Finally, both Eisner and Ivošević are sophisticated investors, *id.* ¶¶ 2-3, who decided to file a joint application for appointment as lead plaintiff before approaching counsel. Dkt. No. 31 Ex. A ¶¶ 4-6. The Court also notes that this is not a situation where "the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action," *Varghese*, 589 F. Supp. 2d at 392, as Eisner has the single largest post-October 30, 2015 losses of any movant.

An additional factor counsels in favor of appointing Eisner and Ivošević as co-lead plaintiffs. Eisner purchased 35,000 net shares during the Class Period, while Ivošević sold some of his shares in the days leading up to October 30, 2015 and the remaining shares in the days

10

following the Alpha Exposure report. Dkt. No. 14 Ex. B; *see also In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332 (S.D.N.Y. 2005) (net shares are "the number of shares retained at the end of the class period"). If, as Popi alleges, a partial disclosure of Eros's fraud was made prior to October 30, 2015, Ivoševič has an interest in pursuing that theory to maximize recovery for himself and for the class. However, neither Eisner nor Ivoševič will be barred from recovery if no partial disclosure was made before that date—as the table above indicates, Eisner and Ivoševič have the greatest post-October 30, 2015 losses and the largest number of combined net shares.

As a result, the Court concludes that Eisner and Ivoševič are a proper group under the PSLRA and have the largest financial interest in this action.

### 2. Eisner and Ivoševič satisfy Rule 23

The next step in identifying the presumptively most adequate plaintiff is to ensure that the person (or persons) with the largest financial interest "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When appointing a lead plaintiff under the PSLRA, "the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met." *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010)

The typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). Here, Eisner and Ivoševič, like other putative class members, claim to have suffered financial loss as a result of material misstatements made by Eros in its registration statement, SEC quarterly reports, and public press releases before its IPO. *See* Maliarov Comp. ¶¶ 1, 44-

60; Popi Comp. ¶¶ 1, 46-61; Dkt. No. 14 at 3-5. Because Eisner and Ivošević's claims "arise[] from the same course of events" as those of other class members and they will "make[] similar legal arguments to prove the defendant[s'] liability" under federal securities laws, the Court finds that they satisfy the typicality requirement. *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d at 291.

To satisfy the adequacy requirement, a lead plaintiff movant must show that "(1) [his choice of] class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011). With respect to the first prong, Eisner and Ivošević have chosen Labaton Sucharow as their counsel and have included a document demonstrating the extensive securities fraud class action experience of that firm. *See* Dkt. No. 14 Ex. E (detailing, *inter alia*, successful PSLRA class action lawsuits against prominent companies like AIG, Countrywide, and General Motors). Based on the accomplishments described in this document and other movants' lack of objection to the qualifications of counsel, the Court finds that Labaton Sucharow "is qualified, experienced, and generally able to conduct the litigation." *Foley*, 272 F.R.D. at 131.

Eisner and Ivošević also satisfy the other two prongs of the adequacy analysis. Although some movants object to their appointment because a considerable amount of Ivošević's losses pre-date the October 30, 2015 Alpha Exposure report, this fact does not put him in conflict with other members of the class. To the contrary, his potential interest in expanding the recovery period is in line with the class's interest in maximizing recovery. For this reason and the reasons previously articulated, the Court is satisfied that Eisner and Ivošević have "a sufficient interest in

12

the outcome of the case to ensure vigorous advocacy." *Id.* As a result, the Court is confident that Eisner and Ivošević together "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(d).

Because Eisner and Ivošević, properly grouped, have the largest financial interest in the outcome of this case and satisfy the requirements of Rule 23, they are the presumptively most adequate plaintiffs. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3. The presumption of adequacy is not rebutted

The competing movants nevertheless argue that any presumption of adequacy is rebutted because Eisner and Ivošević, like Popi, are "subject to unique defenses." *Id.* § 78u–4(a)(3)(B)(iii)(II)(bb). On this point, the other movants repeat their argument that many of Ivošević's losses pre-date the October 30, 2015 disclosure. *See, e.g.*, Dkt. No. 27 at 9-10. As the Court has noted several times, Eisner and Ivošević incurred losses both before and after October 30, 2015. Dkt. No. 14 Ex. B. As a result, they will not be precluded from recovery in the absence of a partial disclosure prior to that date (and in fact have the largest combined losses after October 30, 2015), but do have an interest in maximizing recovery if an earlier partial disclosure is supported by the facts. As a result, the Court is satisfied that Eisner and Ivošević will fairly and adequately protect the interests of the class and, unlike Popi, are not subject to a complete in-and-out trader defense. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II); *Topping*, 95 F. Supp. 3d at 618. As a result, the presumption of adequacy is not rebutted and the Court will appoint Eisner and Ivošević as lead plaintiffs.

## III. APPOINTMENT OF LEAD COUNSEL

The PSLRA provides that, subject to the approval of the Court, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the

class." 15 U.S.C. § 78u–4(a)(3)(B)(v). "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel." *Topping*, 95 F. Supp. 3d at 623. Based on the documents provided to the Court, Dkt. No. 14 Ex. E, and the adequacy analysis above, the Court finds that Labaton Sucharow's extensive involvement in complex securities class action litigation demonstrates that the firm "is qualified, experienced, and generally able to conduct the litigation." *Foley*, 272 F.R.D. at 131. Furthermore, no movant objects to approval of the firm as lead counsel. As a result, the Court approves Eisner and Ivošević's selection of Labaton Sucharow as lead counsel.

## IV. CONCLUSION

For the foregoing reasons, the Court grants the motions to consolidate *Maliarov v. Eros International PLC et al.*, 15-CV-8956 and *Popi v. Eros International PLC et al.*, 16-CV-223. The Court also grants Eisner and Ivošević's motion for appointment as lead plaintiffs and approves Labaton Sucharow as lead counsel. The remaining motions are denied. The Court will schedule an Initial Pretrial Conference for the consolidated action by separate order.

This resolves Dkt. Nos. 6, 8, 11, 16, 19.

SO ORDERED.

Dated: April 5, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge